**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| ADAPTIX, INC., <br>     Plaintiff, <br>     v. <br><br> AT&T MOBILITY LLC, LG ELECTRONICS, INC., and LG ELECTRONICS USA, INC., <br>     Defendants. | Civil Action No. 6:12-cv-00017 |
| ADAPTIX, INC., <br>     Plaintiff, <br>     v. <br><br> PANTECH WIRELESS, INC. and CELLCO PARTNERSHIP *d/b/a* VERIZON WIRELESS, <br>     Defendants. | Civil Action No. 6:12-cv-00020 |
| ADAPTIX, INC., <br>     Plaintiff, <br>     v. <br><br> CELLCO PARTNERSHIP *d/b/a* VERIZON WIRELESS, LG ELECTRONICS, INC. and LG ELECTRONICS USA, INC., <br>     Defendants. | Civil Action No. 6:12-cv-00120 |

**ADAPTIX'S SURREPLY TO DEFENDANTS' MOTION FOR
<u>SUMMARY JUDGMENT ON PRECLUSION GROUNDS</u>**

I.   INTRODUCTION

Defendants' Reply confuses the appropriate legal standards for preclusion. This Surreply will clarify the law of preclusion, as applied to this case.

Defendants' Reply confuses by continuing to mix terminology. Many years ago, courts spoke only in terms of *res judicata* and *collateral estoppel*. Unfortunately, many decisions from that era used those terms imprecisely, or even incorrectly. To avoid confusion, courts and commentators have substituted the more descriptive terms, *claim preclusion* and *issue preclusion*. Adaptix, in its briefing, follows their example.

Probably the most authoritative reference on preclusion issues is the *Restatement of Judgments (Second)*, promulgated by the American Law Institute in 1982. The Supreme Court, the Federal Circuit, and many other courts have frequently referred to it as authoritative, and have relied upon it, in deciding preclusion issues. Adaptix will rely on it, as well, in this Surreply.

A.  ISSUE PRECLUSION

With respect to issue preclusion, the briefs present but a single issue over which the parties disagree: the significance to issue preclusion of the actions' involving different products (LG/Pantech handsets, as opposed to Apple/HTC handsets). Adaptix does not dispute that the handsets operate similarly.[1]

Defendants argue that similarities between the LG/Pantech products and those in the earlier litigation merit issue preclusion. But the Federal Circuit, in *Brain Life*, rejected the

---

[1] Under normal circumstances, if a court disagrees with another court that had faced a similar issue, it would explain why it was reaching a different conclusion from the other court. But if issue preclusion does apply, then this Court would be bound by and must follow Judge Grewal's decision that only the end users, and not the Carriers or manufacturers, could be the direct infringers, no matter how strongly this Court might disagree with it.

identical argument, holding there can be no issue preclusion with respect to goods obtained from manufacturers not involved in the earlier decision, regardless of similarity:

> While similarities between a [product obtained from another manufacturer and never at issue in the first action] and the products actually litigated may mean that certain questions regarding infringement of the *system* claims effectively may be foregone conclusions, they are not barred by our case law applying issue preclusion to previously challenged products which have not been materially altered. And, issue preclusion is no bar to assertion of the method claims based on use or sales of [that] product.

*Brain Life,* 746 F.3d at 1055 (emphasis added).

Defendants do not question that *Brain Life* governs, but instead argue that decision "went out of its way" to note that issue preclusion applied to any new products that are not materially different. Reply at 9. But *Brain Life,* in the statement quoted above, refused to extend that general principle to products obtained from a different manufacturer. With respect to products of a *different* manufacturer, the court held that there could be *no* issue estoppel, despite "similarities between [that manufacturer's product] and the products actually litigated." *Id.* at 1055. Indeed, the court held that there could be no preclusion of any type with regard to the products of the other manufacturer. *Id.* at 1059.

Defendants also suggest, confusingly, that *Brain Life* may have refused issue preclusion simply because apparatus claims were asserted in the earlier action while method claims were asserted in the later action. Reply at 9. But *Brain Life*, in the first sentence of the statement quoted above, explicitly states that system (apparatus) claims are not precluded by an earlier decision with respect to those system claims, despite the similarity of products. In the second sentence, the court mentions, as an additional ground, the issue Defendants refer to in their brief.

With respect to direct infringement by the use of accused handsets by individuals acting for a defendant, such as employees, Defendants do not dispute Adaptix's position (Opp. at 7) of

no issue preclusion. They argue only, in a footnote (Reply at 10), that Adaptix did not *name* any employee in the Complaint or contentions. But the Complaint and contentions accused Defendants of using the invention and practicing the claimed method. As corporations always act through their employees or other agents, no pleading requirement specifies specific individuals be named.

### B. CLAIM PRECLUSION

As to claim preclusion, Adaptix, in its Opposition (at 9-16), pointed out Defendants' misunderstanding of the doctrine of claim preclusion and how the courts apply it. The *Restatement of Judgments, Second* §§18-26, explains the principles of claim preclusion in considerable detail, with numerous examples. Section 18 covers the principle of merger (when plaintiff wins the first action) and §19 the principle of bar (when plaintiff loses the first action). Section 24, entitled "General Rule Concerning 'Splitting,'" describes that a final judgment (whether for or against the plaintiff) "extinguishes the plaintiff's claim pursuant to the rules of merger or bar." And §26 lists exceptions to the general rule concerning splitting.

As Adaptix stated (Opp. at 10), with respect to claim preclusion this Court need only answer one question: did Adaptix improperly split its cause of action against a Carrier by filing separate suits, broken down by handset manufacturer?

In its Motion, Defendants did not even argue that Adaptix should have included in the California action its claims against use of LG and Pantech phones. For that matter, the Motion did not even mention claim splitting. The Opposition (at 15-16) pointed out that Defendants had acquiesced in the practice of pursuing separate suits, broken down by handset manufacturer. The Reply argues only that Adaptix cited "no precedent applying an acquiescence exception to claim preclusion on facts analogous to those here."

However, §26 of the *Restatement of Judgments, Second* provides:

**Exceptions to the General Rule concerning Splitting**

(1) When … the following circumstances exist[], the general rule of §24 [that a plaintiff may not split its claim] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein. …

Comment: … Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim. See Illustration 1.

Illustration:

1. After a collision in which A suffers personal injuries and property damage, A commences in the same jurisdiction one action for personal injuries and another for the property damage against B. B does not make known in either action his objection (usually called "other action pending") to A's maintaining two actions on parts of the same claim. After judgment for A for the personal injuries, B requests dismissal of the action for property damage on the grounds of merger. Dismissal should be refused as B consented in effect to the splitting of the claim.

This illustration reads directly on the conduct of Defendants here. Further, § 26 provides another exception to the rule concerning splitting:

"(c) The plaintiff was unable to … seek a certain remedy … in the first action because of … restrictions on [the court's] authority to entertain multiple … remedies … In a single action, and the plaintiff desires in the second action to … seek that remedy."

As Adaptix pointed out in the Opposition, the America Invents Act would not allow joining the handset manufacturers in a single suit. Nor could Adaptix proceed only against the Carrier, because its claims against the handset manufacturer arose out of the same nucleus of operative facts. In any event, as pointed out above, the Carriers were obliged to timely raise an objection, if they had one.

4

In their Reply, Defendants again discuss similarities of the products between the two suits. In claim preclusion cases, however, courts consider similarity of products or other facts only where those facts would determine whether the plaintiff should have brought the claim against other products in the first suit. But here, the reason for separate suits arises out of the legal requirements of the AIA, which does not allow two handset manufacturers in the same suit, no matter how similar their products.

But again, whatever the effect of the AIA, the Carriers failed to timely raise an objection, and thus under the principle of Illustration 1, above, from the *Restatement of Judgments*, *Second*, "[d]ismissal should be refused as [defendants] consented in effect to the splitting of the claim."

Adaptix sees no other issues in the Reply, as to claim preclusion that merit further comment.

### C. KESSLER DOCTRINE

The Carriers have raised this same argument in recently filed cases in California. In a brief that Adaptix just filed April 9, Adaptix summarizes its position, as against the Carriers' argument below.

The facts in *Kessler* were straightforward. The patent owner (Eldred) sued Kessler for manufacturing and selling a product Eldred alleged infringed all the claims of his patent (all of which were product claims). In that first action, the court found the product did not infringe. Elder then sued a customer of Kessler, as a user and seller of the same Kessler products that had been "held … to be no infringement" in the first suit. *Kessler*, 206 U.S. at 286. Kessler then filed suit against Eldred to enjoin prosecution of any such customer suits.

The Court found that, as the original decree established Kessler's right to manufacture, use, and sell the lighters that had been found noninfringing, harassing customers in this way

5

would violate Kessler's right. On that basis, the Court enjoined Eldred from bringing suits of this type.

On those facts, the decision seems well reasoned. Since 1907, the general law of issue preclusion has developed to reach the same result, by eliminating the requirement of mutuality of estoppel as to issues actually litigated.

*Kessler* did not, however, present the situation where the product is (or could be) *found to infringe* a valid patent, but where the defendant in the first case avoids liability for some other reason, such as his not being the *actual* seller, importer, or user of the infringing product. In that situation, there would be no reason (and certainly none suggested by any language in *Kessler*) to prevent the patent owner from suing the person that *actually* sold, imported, or used the infringing product. Rather, to deny that right would seem perverse.

Thus, in *Rubber Tire Wheel Co. v. Goodyear Co*., 232 U.S. 413 (1914), the Supreme Court allowed the patent owner to pursue an infringement action against a customer of the company (Goodyear) that had been the defendant in the first suit, where the claim in the customer suit was that the customer was itself manufacturing an infringing product, albeit by using materials purchased from Goodyear to do so. The Court distinguished *Kessler* because "when other persons become manufacturers on their own behalf, … [Goodyear] cannot insist upon their being protected from suit for infringement by reason merely of its right to make and sell." *Rubber Tire Wheel,* 232 U.S. at 419.

Consistent with the facts in *Kessler*, the Federal Circuit, in *Brain Life*, noted the *Kessler* Doctrine gives an accused infringer rights "with respect to specific <u>products</u> that had been held to be non-infringing," *Brain Life,* 746 F.3d at 1057 (emphasis added). To the extent a product has

6

been found to be noninfringing, the *Kessler* doctrine bars claims based on products or acts that are "essentially the same" as those previously found not to infringe. *Id.*

The district court in the California suits, however, did not find the accused <u>products</u> noninfringing. To the contrary, the district court explicitly ruled, on Defendants' motion that a reasonable jury could find that the accused products infringe. The accused products thus never obtained "the status of non-infringing device[s]." *Id.* at 1056.

*Brain Life* noted the *Kessler* doctrine fills the gap in the doctrines of claim preclusion and issue preclusion "where circumstances justify that result." *Id.* Circumstances justify that result where an accused product has been found not to <u>meet the limitations of the asserted claims</u>, and thus not to infringe. Indeed, in *Kessler* itself, and the two Federal Circuit decisions applying *Kessler*,[2] the district court in the earlier cases had found that the accused products did not meet the limitations of the asserted claims.

The decision in the California suits, however, concerned only whether, if there was infringement, as between the Defendants and the end users – which was the direct infringer. The district court rejected Defendants' argument that the handsets did not meet the limitations of the claims. Because the California district court rejected Defendants' argument that the handsets did not meet the limitations of the asserted claims, the *Kessler* Doctrine does not apply.

Defendants argue, mechanically, that the *Kessler* Doctrine would bar any suit "on" the same patent. The *Kessler* Doctrine would make no sense, however, if invoked where the product *has* the claimed features. It only makes sense where the product does not have those features, as in *Kessler* itself.

Other courts support this limited application of the *Kessler* doctrine. In *Shoom, Inc. v. Elec. Imaging Sys. of Amer., Inc.*, the plaintiff in a declaratory judgment action moved to enforce

---

[2] *Brain Life* and *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987).

7

a final judgment from this District, asking the Court to enjoin the defendant from filing suit against the plaintiff's customers in the Northern District of Illinois. *Shoom, Inc. v. Elec. Imaging Sys. of Amer., Inc.*, Case No. 07-05612, 2011 WL 4595212 *1-*2 (N.D. Cal. Oct. 4, 2011). The court, citing *Kessler*, denied the motion, stating, "on the existing record, it is not clear whether or not [plaintiff's] customers' use of Shoom's products would practice the steps of the asserted claims of the '837 Patents, even if [plaintiff] does not." *Id.* at *4. The court has thus recognized limiting *Kessler* to circumstances where a materially identical product has been found not to infringe. *Id*. at *3 ("[T]he *Kessler* doctrine grants a 'limited' trade right and provides a party who has prevailed in a patent litigation a measure of certainty that it may manufacture, use or sell a product that has been deemed not to infringe without fear of continued litigation") (emphasis added).

### 1. Should this Court extend the *Kessler* Doctrine?

Recognizing that the facts here differ from those in *Kessler*, the question becomes whether the Court should *extend* the doctrine to cover a situation, such as here, where the product *does* (or could be found to) infringe, but where the patent owner loses the first suit because someone other than the defendant was the direct infringer. Defendants argue that the Court should extend the doctrine, so as to bar any suit on the patent, even one against the direct infringer. Defendants, however, fail to articulate any policy reason for such an extension – other than it would allow them to profit from inducing and contributing to that direct infringement.

To begin with, it would seem perverse and against public policy to bar a patent owner from ever suing an infringer in any situation, absent a good reason for establishing such a bar. In *Kessler*, as in *Brain Life* and *MGA*, that there had been a final judgment that the product did not have the patented features sufficed to justify a bar because, to repeat, a court had found that the

8

product did not have the patented features. But extending the doctrine to situations where the results in the first case turns on some other factor would be hard to justify, as it would allow unbridled infringement.

*Brain Life* recognized that *Kessler* was an anachronism and "the continuing force of the *Kessler* Doctrine in the face of the development of defensively applied issue preclusion may be questionable on the precise set of facts presented in the case at bar," where the product *had* been found to not infringe. *Brain Life*, 746 F.3d at 1058. With obvious reluctance, the court stated "But, the *Kessler* Doctrine exists, and we are bound by it, even if its viability under current estoppel may be of less value now that was at the time it was handed down." *Id.*

Although it may cause the Federal Circuit discomfort, until the Supreme Court revisits the issue there will be a Kessler Doctrine. But neither the case itself, nor the development of preclusion law since 1907, would require expanding that doctrine, and, for the reasons above, it would be perverse to do so.

Dated: April 13, 2015

Respectfully submitted,

/s/ *Paul J. Hayes*
Paul J. Hayes
James J. Foster
**HAYES MESSINA GILMAN & HAYES LLC**
200 State Street, 6th Floor
Boston, MA 02109
Tel: (617) 345-6900
Fax: (617) 443-1999
Email: phayes@hayesmessina.com
Email: jfoster@hayesmessina.com

Craig Tadlock
Texas State Bar No. 00791766
**TADLOCK LAW FIRM PLLC**
2701 Dallas Parkway, Suite 360
Plano, TX 75093

                                             Tel: (903) 730-6789
                                      Email: craig@tadlocklawfirm.com

                                        **ATTORNEYS FOR ADAPTIX, INC.**

### CERTIFICATE OF SERVICE

     I certify that a copy of the foregoing document was filed electronically in compliance with the Local Rule CV-5 on April 13, 2015. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

                                        /s/ *Paul J. Hayes*
                                        Paul J. Hayes