**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| ADAPTIX, INC., <br>     Plaintiff, <br>   v. <br><br> AT&T MOBILITY LLC, LG ELECTRONICS, INC., and LG ELECTRONICS USA, INC., <br>     Defendants. | Civil Action No. 6:12-cv-00017 |
| ADAPTIX, INC., <br>     Plaintiff, <br>   v. <br><br> PANTECH WIRELESS, INC. and CELLCO PARTNERSHIP *d/b/a* VERIZON WIRELESS, <br>     Defendants. | Civil Action No. 6:12-cv-00020 |
| ADAPTIX, INC., <br>     Plaintiff, <br>   v. <br><br> CELLCO PARTNERSHIP *d/b/a* VERIZON WIRELESS, LG ELECTRONICS, INC. and LG ELECTRONICS USA, INC., <br>     Defendants. | Civil Action No. 6:12-cv-00120 |

**ADAPTIX, INC.'S REVISED\* REPLY IN SUPPORT OF OBJECTIONS TO THE MAGISTRATE REPORT AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PRECLUSION GROUNDS**

---

\*This Revised Reply differs from the Reply Adaptix filed on June 25, 2015, in that it also discusses the June 30, 2015 Federal Circuit decision in *SpeedTrack, Inc.v. Office Depot, Inc.* ("*SpeedTrack*") (slip op. attached as Ex. A). The Revised Reply is filed pursuant to the Court's Order granting leave (Dkt. 376 in Case No. 6:12-cv-17; July 2, 2015).

06091609

To avoid repetition, Adaptix limits this Reply to those arguments in Defendants' Response ("Resp.") that Adaptix's Objections ("Obj.") have not already addressed.

## Issue Preclusion[1]

The law limits issue preclusion to issues *actually litigated*, and decided adversely. The parties in the California actions did not litigate 1) contributory infringement, as to any handsets, or 2) direct infringement by end-users (including employees of Defendants)[2], (Obj. at 1, n. 3), of LG/Pantech handsets. As Adaptix thus did not "lose" on those issues, the California judgment does not create issue preclusion as to them. This Court thus has to try those issues, unless the California judgment created claim preclusion as to them.

## Claim Preclusion

Acquiescence. By contrast with issue preclusion, claim preclusion arises from a plaintiff's *failure to litigate* a portion of a claim it was obliged to include in its first action, but did not (i.e., claim splitting). Claim preclusion would apply to that portion even where the plaintiff *wins* the first lawsuit.[3]

So understood, Carrier Defendants' only plausible argument for *claim* preclusion is that the law required Adaptix to include in the California actions its claims for use of LG/Pantech handsets. If so, the judgment could create claim preclusion as to the use of those handsets. But the Fifth Circuit's adoption of §26(1)(a) of the Restatement (Second) of Judgments required the Carrier Defendants to have raised that objection *during the simultaneous pendency* of both sets of cases, to

---

[1] Defendants describe the issues as those of res judicata and collateral estoppel, even though neither the Report and Recommendation ("R&R") nor Adaptix uses that arcane, and sometimes confusing, terminology. The R&R identifies the issues, more precisely, as those of claim and issue preclusion; Adaptix adopts that usage, as well.

[2] Defendants do not dispute that the R&R overlooked that the judgment did not reach the issue of use of LG/Pantech handsets by Defendants' employees. (Resp. at 13). They argue only that Adaptix should raise the issue in the body of the brief, which Adaptix does above.

[3] For example, since the California actions claimed infringement by the use of earlier Apple/HTC handsets, even if Adaptix wins its appeal, the judgment would bar Adaptix from suing for contributory infringement as to the use of those handsets.

allow the plaintiff to deal with the problem well before final judgment. *In the Matter of Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996). Their failure to object to separate suits, pairing each carrier with each handset manufacturer, thus waived any claim preclusion argument. (Obj. at 3-4).

Carrier Defendants attempt to distinguish *Super Van* [4] and the Restatement (Second) [5] (Resp. at 4-6), but their distinctions conflict with the texts of both. They argue that they never "affirmatively expressed a desire" for separate suits, ignoring that the law required them to affirmatively *object* to the maintenance of separate suits to prevent "encouraging litigants to engage in dishonest (or at least less than forthright) behavior to gain tactical advantage." *Super Van*, 92 F.3d at 371. Finally, they mention that they had earlier "moved to stay this action," *citing* Dkt.120 from 6:12-cv-00017. But that motion did not object to the filing of actions directed to separate carrier/manufacture pairs; far from it. The motion simply asked to delay certain deadlines in these initial cases to align those deadlines with the deadlines in the later-filed cases.[6]

Temporal Limits.  *Aspex Eyewear, Inc v. Marchon Eyewear Inc.,* 672 F.3d 1335 (Fed. Cir. 2012) and *Brain Life*, *LLC v. Elekta Inc.,* 746 F.3d 1045 (Fed. Cir. 2014) limit claim preclusion, where it exists, to infringement prior to the filing of the action in which the final judgment had been entered (here, March 2012), even if the post filing acts involved *identical* goods or services. Adaptix faulted the R&R for disregarding that precedent. (Obj. at 5-6.)

Rather than defending (or even explaining) the R&R's handling of this precedent, Carrier Defendants argue (Resp. at 7-9) a ground that the R & R did not adopt, namely, that those decisions

---

[4] Defendants argue that this Court should not follow *Super Van*, because it is "only one Fifth Circuit case," (Resp. at 4), but cite no contrary authority in this, or any other, circuit. Further, *Super Van* cites cases from the First, Fourth, Seventh, and Ninth Circuits as also adopting this portion of the Restatement (Second). 92 F.3d at 371.

[5] Defendants appear to argue that this portion of the Restatement (Second) relates to issue preclusion, which depends on who prevails on the issue in the first suit. It clearly does not.

[6] Carrier Defendants (Resp. at 5) also mentioned an attorneys' fees motion filed in California, but failed to respond to Adaptix's comments (Obj. at 3-4, n.4) refuting the significance of that motion.

conflict with *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281 (Fed. Cir. 2009). *Aspex*, however, distinguished *Nystrom* as applying issue preclusion, ruling that *Nystrom*, in referring to "claim preclusion," had simply used the wrong terminology. 672 F.3d at 1343-44. There is no direct conflict between Federal Circuit decisions where, as here, the later decision resolves the alleged conflict. *Autogenomics, Inc. v. Oxford Gene Technology Limited*, 566 F.3d 1012, 1020 (Fed. Cir. 2009) ("The dissent suggests this reading of *Avocent* renders it in conflict with other precedent of this court. The court in *Avocent*, however, considered and distinguished the very precedent that the dissent cites.")[7]

The Kessler Doctrine

Adaptix (Obj. at 6-9) has anticipated most of Defendant's response. To summarize, where an initial suit on a patent ends in a finding of noninfringement because the products sold or used did not have the inventive features of the product or method claims (such as in *Kessler v. Eldred*, 206 U.S. 285(1907); *Brain Life; MGA, Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987);and *Speed Track*), the doctrine properly applies. To quote *SpeedTrack* (slip op. at 15), "Kessler creates a limited trade right that attaches to the [noninfringing product] itself."

But no policy supports extending this doctrine to cases where the product sold or used *does have* the inventive features -- but the first court decision finds noninfringement for some other reason, such as 1) the first defendant's actions having occurred offshore; 2) the first defendant's actions having occurred prior to the issue date of the patent; 3) the first defendant's actions having involved a licensed product; or, as here, 4) a nonparty's having been the direct infringer. In these

---

[7] Defendants apparently did not read *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991), before misciting it for the proposition that "[r]es judicata bars any subsequent assertion of a patent against the party or its privies when the devices in the second suit are 'essentially the same' as the devices in the first suit." (Resp. at 7). In *Foster*, the patent owner *did* assert the patent in the second suit, and no one objected. 947 F.2d at 473, n. 2, 3. The issue *Foster* discussed was whether invalidity and noninfringement defenses could be raised to that patent, where the earlier suit had been dismissed with prejudice.

situations, the law should allow a patent owner to pursue an action against conduct that does not suffer from that disability.  No language from *Kessler* or its progeny suggests otherwise.

The Federal Circuit reinforced this distinction in *SpeedTrack*. The patent owner there had argued that the court should limit the *Kessler* Doctrine to only preclude suit against the seller of the product. In applying the doctrine to preclude suit against a (second) customer, the Federal Circuit emphasized that the earlier suit had held not only that the product itself did not infringe but that a first *customer*'s identical *use* of the product did not infringe. Slip op. at 20-21. By contrast, here Judge Grewal ruled that a jury could find that the use by customers in the first suit (users of Apple/HTC handsets) *did infringe* – the opposite of the result of the earlier suit in *SpeedTrack*.

Defendants argue that the patent owner should not be able to sue *anybody*, *ever again* where a court finds noninfringement for *any* reason, including the above, where the goods are the same.  But extending the *Kessler* doctrine to bar suits against actual direct infringers would be unprecedented and perverse.[8]  That extension would simply allow unbridled infringement, for no apparent reason.[9]

Contributory Infringement

The California court held a jury could find direct infringement, but the infringing acts would be those of the end-users, not the carriers.  The R&R found this decision created issue preclusion in favor of the carriers. (R&R at 18). The R&R clearly erred, however, in concluding

---

[8] Defendants misdescribe *Rubber Tire Wheel Co. v. Goodyear Co.,* 232 U.S. 413 (1914) as barring suits against customers. (Resp. at 12, n.5). The language Defendants cite was the statement that the *Kessler* Doctrine would not allow a suit against a customer whose liability was merely derivative, such as the defendant in *Kessler* itself.  In *Rubber Tire*, however, the Supreme Court *allowed* suit against a customer, despite its having purchased materials from Goodyear, because that customer was itself performing the infringing acts of manufacture. That distinction conflicts directly with Defendants' request to expand the *Kessler* Doctrine to any and all possible defendants. So also does the decision in *Shoom Inc. v. Electrical Imaging Sys. Of Am., Inc.*, 2011 WL 4595212 (N.D.Cal. Oct. 4, 2011), which refused to enjoin suits against customers, if based on the customer's own actions.
[9] Defendants cite *Molinaro v. Am. Tel. & Tel. Co.,* 460 F.Supp. 673 (E.D.Pa. 1978) (Resp. at 10-11), but there the court dismissed the complaint as a sanction, and so treated the issue of infringement as having been adversely decided.

that the judgment precluded a contention of direct infringement by the end-user. (R&R at 42-44).

In defending the R&R, Defendants argue that the end-users are in "privity" with the carriers as to preclusion. (Resp. at 4). They do not explain, however, how preclusion on this issue, whether based on privity or any other facet of the relationship, would exonerate the end-users. *See* Restatement (Second) of Judgments §51 (1) (where two persons have a relationship that might give rise to vicarious liability, judgment in favor of one has no preclusive effect in action against the other if judgment "based on a defense that was personal to the defendant in the first action.")

Giving the end-users the "benefit" of preclusion as to the decided issue - that they, not the carriers, perform the infringing acts – would scarcely exonerate them. Had Adaptix named the end-users as additional defendants in the California action, that court would not have dismissed the case as against the end users, but would have proceeded to trial, where the jury could have found they directly infringed. How then can it be argued that, in separate suits, the result in the first case as to the carrier would preclude such a finding?[10]

---

[10] Defendants' Response does not even address, let alone provide a satisfactory answer to, this question, despite Adaptix's having clearly articulated the issue in its Objections:

"By [the Carriers'] own admissions, and under *Shoom*, *Kessler* does not even preclude a suit against the Carriers' customers... Much less then does the *Kessler* doctrine preclude… a *finding* of direct infringement by an end user—who, as here, is not a named defendant—as an element of…contributory infringement against a non-party to the previous litigation (i.e., LG) (Obj. at 11.)

Defendants' Response, however, characterizes that argument as follows: "Adaptix argues that 'the *Kessler* doctrine does not even preclude a suit against the Carriers' customers for infringement' because of 'AT&T and Verizon's own admissions.' Obj. at 11 (emphasis in original). Yet 'a suit' is precisely what *Kessler* did and does preclude." (Resp. at 15.)

Thus, Defendants again sidestep the issue. Whether *Kessler* does, or does not, preclude a suit against the Carriers' customers is not the relevant inquiry. **There is no suit against the Carriers' customers**. Adaptix merely raises the fact that *Kessler* would not "even preclude a suit against the Carriers' customers" to illustrate how illogical Defendants' suggestion is that the *Kessler* doctrine would preclude a *finding* of direct infringement by those customers, as an element of contributory infringement by LG or Pantech, where the customers had not been sued.

5

Dated: July 7, 2015                     Respectfully submitted,

/s/     *Paul J. Hayes*
Paul J. Hayes
Kevin Gannon (*pro hac vice*)
James J. Foster
Michael J. Ercolini
**HAYES, MESSINA, GILMAN & HAYES LLC**
200 State Street, 6th Floor
Boston, MA 02109
Tel: (617) 345-6900
Fax: (617) 443-1999
Email: phayes@hayesmessina.com
Email: kgannon@hayesmessina.com
Email: jfoster@hayesmessina.com
Email: mercolini@hayesmessina.com

Craig Tadlock
Texas State Bar No. 00791766
Keith Smiley
Texas State Bar No. 24067869
**TADLOCK LAW FIRM PLLC**
2701 Dallas Parkway, Suite 360
Plano, TX 75093
Tel: (903) 730-6789
Email: craig@tadlocklawfirm.com
Email: keith@tadlocklawfirm.com

**ATTORNEYS FOR ADAPTIX, INC.**

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was filed electronically in compliance with the Local Rule CV-5 on July 7, 2015. As of this date, all counsel of record have consented to electronic service being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

/s/ *Michael J. Ercolini*